UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                          | ) |                              |
|--------------------------|---|------------------------------|
| JOYCELYN ROOTHS,         | ) |                              |
|                          | ) |                              |
| Plaintiff,               | ) |                              |
|                          | ) |                              |
| v.                       | ) | Civil Action No. 09-0492 (PLF) |
|                          | ) |                              |
| DISTRICT OF COLUMBIA,    | ) |                              |
|                          | ) |                              |
| Defendant.               | ) |                              |
|                          | ) |                              |

OPINION

This matter is before the Court on the plaintiff's motion for attorneys' fees. On March 31, 2011, Magistrate Judge Robinson issued a Report and Recommendation in which she recommended that the Court award the plaintiff almost the full amount of fees requested. The defendant has filed objections to that Report and Recommendation. Upon consideration of the parties' arguments, the relevant legal authorities, and the entire record in this case, the Court will grant in part and deny in part plaintiff's motion, awarding fees in the amount of $ $23,350.42.[1]

---

[1] The papers considered in connection with this matter include: plaintiff's complaint ("Compl."); the administrative record ("AR"); plaintiff's motion for attorneys' fees and costs ("Fee Mot."); defendant's opposition to that motion ("Fee Opp."); plaintiff's reply ("Fee Reply"); defendant's surreply ("Surreply"); plaintiff's response to that surreply ("Surreply Resp."); Magistrate Judge Robinson's Report and Recommendation ("R&R"); defendant's objections to the Report and Recommendation ("Obj."); plaintiff's response to those objections ("Obj. Resp."); the declaration of Douglas Tyrka attached to plaintiff's motion for fees ("3/18/2010 Tyrka Decl."); the declaration of Douglas Tyrka attached to plaintiff's reply in support of her motion for fees ("4/8/2010 Tyrka Decl."); and the declaration of Douglas Tyrka submitted in response to the Court's June 16, 2011 Order ("6/24/2011 Tyrka Decl.").

I. BACKGROUND

Plaintiff Joycelyn Rooths is the mother of "M.R.," a child eligible to receive special education services from the District of Columbia Public Schools ("DCPS"). See AR at 12. On October 3, 2008, Ms. Rooths filed an administrative complaint in which she alleged that DCPS had violated the Individuals with Disabilities Education Act ("IDEA") by (1) placing M.R. at Sousa Middle School for the 2008-09 school year without including Ms. Rooths "in decision-making regarding placement," and (2) preventing M.R. from attending Sousa beginning on September 2, 2008. Id. at 13. As relief for these alleged violations, Ms. Rooths requested that (1) DCPS be found to have denied M.R. a free and appropriate public education ("FAPE") beginning on September 2, 2008, and continuing until the date that M.R. was permitted to attend an appropriate school; (2) M.R. be enrolled "at a full-time special education school" of Ms. Rooths' choosing, at DCPS' expense; and (3) DCPS be instructed to hold a meeting to determine whether M.R. should receive additional educational services as compensation for the period during which M.R. was denied a FAPE. Id.

On October 22, 2008, several days before the scheduled administrative hearing on Ms. Rooths' October 3, 2008 complaint, DCPS notified Ms. Rooths that M.R. was being placed in the private school that Ms. Rooths had requested. AR at 6. Five days later, on October 27, 2008, an administrative Hearing Officer presided over a hearing concerning the claims made in Ms. Rooths' October 3, 2008 complaint. The Hearing Officer issued a written ruling on those claims (a Hearing Officer Decision or "HOD") on November 13, 2008. Because M.R. had already been given the educational placement that had been requested in the administrative complaint, the Hearing Officer found that the only question remaining for her decision concerned

whether M.R. was "entitled to compensatory education as a result of DCPS's alleged failure to (1) provide an appropriate placement for [M.R.], including transportation to and from that placement, and (2) allow [Ms. Rooths] to participate in the decision-making regarding placement." Id. at 6.

The Hearing Officer denied Ms. Rooths' requests for compensatory education. She found that Ms. Rooths' claims concerning DCPS' failure to include her in its decision-making process had already been addressed and rejected in a recent decision by another Hearing Officer ("the Prior Decision"). AR at 6; see id. at 30-34 (prior HOD). That Prior Decision concerned events occurring in the spring and summer of 2008 and was issued in the wake of an administrative hearing held on September 16, 2008. See id. at 30.

Declining to revisit issues resolved by the Prior Decision, the Hearing Officer charged with ruling on Ms. Rooths' October 3, 2008 administrative complaint concluded that Ms. Rooths' claims for compensatory education could only be predicated on the denial of FAPE alleged to have occurred when M.R. was unable to attend her educational placement at Sousa between September 2, 2008 and October 22, 2008. AR at 7. According to the Hearing Officer, however, M.R.'s absence from Sousa resulted only in part from the actions of DCPS; Ms. Rooths herself also bore responsibility for that state of affairs. See id. Consequently, the Hearing Officer found that "it would be inappropriate to hold DCPS solely liable for failing to provide an appropriate placement for [M.R.] subsequent to September 2, 2008." Id. Furthermore, in light of that finding, "an award of compensatory education would be inappropriate." Id.

Ms. Rooths moved for reconsideration of the Hearing Officer's decision. See AR at 173. In a written decision issued on December 17, 2008, the Hearing Officer granted the

3

motion in part, finding that DCPS *was* responsible for denying a FAPE to M.R. between September 2, 2008 and October 22, 2008. See id. at 174. The Hearing Officer denied Ms. Rooths' related request for compensatory education, however, because Ms. Rooths "ha[d] failed to prove what services, if any, would constitute appropriate compensatory education for" M.R. Id. at 175.

On March 13, 2009, Ms. Rooths challenged the Hearing Officer's decision in a five-page complaint filed against the District of Columbia in this Court. She alleged that M.R. was entitled to compensatory education services because (1) DCPS had excluded Ms. Rooths from the decision-making process concerning M.R.'s school placement, and (2) M.R. had not been permitted to attend Sousa, the school in which she had been placed, between September 2, 2008, and October 22, 2008. Compl. ¶¶ 8-17; id. at 5. She requested that DCPS be required to "convene a[ multi-disciplinary team] meeting to discuss and determine compensatory education and to devise a compensatory education plan to compensate M.R. for DCPS' failures." Id. at 5. Although the parties filed cross-motions for summary judgment, the Court never issued a ruling on the merits of the plaintiff's complaint. Instead, at the parties' request, Magistrate Judge Robinson, to whom the case had been referred for a report and recommendation, dismissed the complaint with prejudice after DCPS agreed to convene a meeting to discuss whether compensatory education for M.R. would be appropriate in light of M.R.'s absence from Sousa in September and October of 2008. See Dismissal Order at 1 (D.D.C. Mar. 4, 2010). After that meeting was held, M.R. ultimately received compensatory education. Surreply at 1-2.

Because Ms. Rooths ultimately received at least some of the relief she sought in these proceedings, she now moves as a prevailing party for the award of attorneys' fees.

4

## II. LEGAL STANDARDS

Contrary to the mistaken assertions of both parties, see Obj. at 3; Obj. Resp. at 4, this Court "considers *de novo* those portions of [a magistrate judge's report and] recommendation to which objections have been made, and 'may accept, reject, or modify the recommended decision[.]'" D.D. *ex rel.* Davis v. District of Columbia, 470 F. Supp. 2d 1, 1 (D.D.C. 2007) (quoting FED. R. CIV. P. 72(b)). Because in this case the District of Columbia has objected to nearly every aspect of Magistrate Judge Robinson's Report and Recommendation, the Court's analysis is with respect to many issues equivalent to a decision in the first instance on the merits of plaintiff's motion for fees. The Court notes, however, that it accepts those portions of the Report and Recommendation to which the parties have not objected. In particular, as the plaintiff has not objected to any portion of the Report and Recommendation, the Court accepts the magistrate judge's recommendation that no fees be awarded for the work of either Sharon Millis or Yanet Scott. See R&R at 11.

The Court has previously set forth the appropriate analytical framework for determining the award of attorneys' fees and costs in special education cases like this one. See Blackman v. District of Columbia, 59 F. Supp.2d 37, 42-44 (D.D.C. 1999). To recover reasonable attorneys' fees, a plaintiff must first demonstrate that she is a prevailing party in the litigation. See id. at 40-41. The Court then must determine whether the fees sought are reasonable by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" — the so-called "lodestar" fee. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

On the issue of reasonableness, plaintiff must submit supporting documentation with the motion for attorneys' fees, providing sufficient detail so that the Court can determine "*with a high degree of certainty*" that the hours billed were actually and reasonably expended, that the hourly rate charged was reasonable in view of the attorney's reputation and level of skill and experience with respect to this type of case, and that the matter was appropriately staffed to do the work required efficiently and without duplicative billing. In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (emphasis in original); see Hensley v. Eckerhart, 461 U.S. at 333; Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996); Blackman v. District of Columbia, 397 F. Supp. 2d 12, 14-15 (D.D.C. 2005) . At a minimum, a fee applicant must provide some information about the attorneys' billing practices and hourly rate, the attorneys' skill and experience (including the number of years that counsel has practiced law), the nature of counsel's practice as it relates to this kind of litigation, and the prevailing market rates in the relevant community. See Covington v. District of Columbia, 57 F.3d at 1107. The D.C. Circuit also requires that "fee applications include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any." In re Donovan, 877 F. 2d 982, 994 (D.C. Cir. 1989) (citing Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1326 (D.C. Cir. 1982)).

By providing such information, a plaintiff establishes a presumption that the number of hours billed and the hourly rate are reasonable, and the burden shifts to the defendant to rebut the plaintiff's showing of reasonable hours and reasonable hourly rates for attorneys of the relevant level of skill and expertise. "[I]n the normal case the Government must either

accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate." Covington v. District of Columbia, 57 F.3d at 1109-10 (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319 at 1326).

III. DISCUSSION

*A. Reasonableness of Rates*

Plaintiff seeks fees for the services of five lawyers or other individuals, to be paid at the following rates: $557-$569 per hour for Douglas Tyrka, an attorney with approximately 11 years of litigation experience during the relevant time period; $279 for Zachary Nahass, an attorney with approximately 1 to 2 years of experience; $279-$285 per hour for Nicholas Ostrem, an attorney with approximately 1 year of experience; $152-$285 per hour for Patrick Meehan, who graduated from law school in 2009; and $152 per hour for Olivia West, whose job description is not provided. See Fee Mot., Ex. 1; 3/18/10 Tyrka Decl. ¶¶ 9-14.[2] According to Mr. Tyrka's signed declaration, the firm did not bill any clients during the 2009-2010 fiscal year. 6/24/2011 Tyrka Decl. ¶ 4. In the 2008-2009 fiscal year, the firm billed and was paid by clients at the following hourly rates: $540 for Douglas Tyrka; $275 for Mr. Nahass; and $150 for Mr. Meehan. Id. ¶ 3. No clients were billed for Mr. Ostrem's time during that year. Id. ¶ 4. It is unclear from plaintiff's papers how frequently plaintiff's counsel is paid directly by a client who is never reimbursed for those fees by the District of Columbia.

---

[2] The plaintiff has failed to document that Ms. West is either a lawyer, a paralegal, or a law clerk, and so Ms. West's fees could be disallowed for the same reason that those of Yanet Scott were. See R&R at 11. But because Ms. West's fees, incurred for work performed on August 7 and 12, 2008, see Fee Mot., Ex. 1 at 1, will be disallowed as unrelated to the instant case, see infra at 13, there is no need to discuss Ms. West's qualifications.

7

The rates at which plaintiff's counsel seek to be paid are considerably in excess of those established by the so-called Laffey Matrix. See Laffey Matrix — 2003-2012, *available at* http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf . That schedule of attorneys' fees, first developed based on information about the prevailing rates charged by federal litigators in the District of Columbia, is maintained by the United States Attorney's Office for the District of Columbia and is updated annually to reflect increases in the local Consumer Price Index. See id. n.3. In this circuit, the rates contained in the Laffey Matrix are typically treated as the highest rates that will be presumed to be reasonable when a court reviews a petition for statutory attorneys' fees. See Blackman v. District of Columbia, 59 F. Supp. 2d at 43. As already noted, the hourly rates prescribed by the Laffey Matrix for plaintiff's counsel are considerably lower than those counsel proposes: $410 for Mr. Tyrka; $225 for Mr. Nahass and Mr. Ostrem; and $130 for Mr. Meehan.

Although they seek rates higher than the presumptive maximum set by the Laffey Matrix maintained by the United States Attorney's Office for the District of Columbia ("USAO Laffey Matrix"), plaintiff's counsel contend that those rates are nonetheless reasonable because they are drawn from the so-called "enhanced Laffey Matrix." The enhanced matrix is a schedule of fees based on the original Laffey Matrix and then updated to reflect, not increases in the CPI of the area in and around the District of Columbia, but instead increases in the national Legal Services Index prepared by the United States Bureau of Labor Statistics. See Fee Reply, Ex. 9 ¶ 21.

This Court has previously declined to approve as reasonable the inflated rates contained in a proposed alternative fee matrix, see Blackman v. District of Columbia, 677 F.

Supp. 2d 169, 176 (D.D.C. 2010), and it declines to do so now. A plaintiff requesting attorneys' fees bears the burden of demonstrating in the first instance that the rates proposed "are in line with those prevailing in the community for similar services." Covington v. District of Columbia, 57 F.3d at 1108. The Court is not persuaded that the enhanced matrix proposed by the plaintiff reasonably approximates the rates that are charged in the District of Columbia metropolitan area by lawyers litigating cases under the IDEA. First, the plaintiff's enhanced matrix was generated using *national* statistics rather than measurements particular to the District of Columbia area. See DL v. District of Columbia, 256 F.R.D. 239, 243 (D.D.C. 2009) ("the USAO matrix is more in line with precedent because it is based on the local community"). Second, while it is doubtless true that some sectors of the legal services industry have experienced rapid fee inflation in recent years, the Court is unconvinced that fees associated with IDEA litigation in the District of Columbia have increased at the same rate.

The evidence produced by the plaintiff in an attempt to demonstrate that her counsel's proposed rates reflect those prevailing in the community is of dubious relevance. According to Mr. Tyrka, he has in the past negotiated and reached settlement agreements with the District of Columbia regarding the amount of fees to which he was entitled because numerous clients of his prevailed in IDEA administrative actions. See 4/8/2010 Tyrka Decl. ¶¶ 4-8. In at least some of those instances he requested an amount of fees that was based on an enhanced Laffey rate, and the District agreed to pay that amount or an amount adjusted downward only to account for a statutory fee cap. See Fee Reply at 7. But the amount of fees that the District agrees to pay to an attorney as part of a bulk settlement is not determined by market forces, such as demand for the attorney's services or the supply of similarly qualified attorneys in the District,

9

and therefore does not serve as proof of the "market rates" charged to clients by comparable attorneys performing comparable work. Covington v. District of Columbia, 57 F.3d at 1107 (reasonable rates "'to be calculated according to the prevailing market rates in the relevant community'" (citation omitted)). The Court therefore does not consider the proffered examples of Mr. Tyrka's past settlements with the District to constitute evidence of prevailing market rates.

For these reasons, the Court concludes that the plaintiff has failed to demonstrate that the hourly rates set by her counsel are reasonable. The defendant contends that the Court should look to the Attorney Fees Guidelines promulgated by DCPS to determine the amount of a reasonable rate, see Obj. at 16, but makes no attempt to explain why those Guidelines are reliable evidence of prevailing market rates, or why a defendant should be permitted to set the rate at which plaintiff's counsel is compensated. Since neither party has presented satisfactory evidence to demonstrate that their preferred hourly rates are reasonable, the Court will, as it has in the past, determine the amount of that rate by reference to the USAO Laffey Matrix.

Although the USAO Laffey Matrix provides an appropriate starting point for a determination of a reasonable rate, the rates contained in the matrix represent, as already noted, presumptive *maximum* rates. Furthermore, those maximum rates are appropriately paid in actions constituting "complex federal litigation." Covington v. District of Columbia, 57 F.3d at 1103. This litigation does not much resemble the sort of complicated cases in which a plaintiff's counsel is appropriately awarded fees at the maximum allowable rate. Like most IDEA cases, the claim on which the plaintiff prevailed in this action involved very simple facts, little evidence, and no novel or complicated questions of law. It was presented in a reasonably informal setting to an administrative Hearing Officer in a two-hour hearing. In this Court, had

plaintiff's claim not been settled by Magistrate Judge Robinson, it would have been resolved on a motion for summary judgment involving straightforward issues. In such a case a rate considerably below the Laffey maximum is appropriate. See Wilson v. District of Columbia, Civil Action No. 09-2258, 2011 WL 1428090, at *3 (D.D.C. Apr. 14, 2011) (Laffey rate "not generally applicable to IDEA cases because they are not usually complex"); A.C. ex rel. Clark v. District of Columbia, 674 F. Supp. 2d 149, 155 (D.D.C. 2009) (refusing to use USAO Laffey rates in an IDEA case where "almost all of the attorney's fees in question are the result of counsel's preparation for attendance at routine administrative hearings"); Agapito v. District of Columbia, 525 F. Supp. 2d 150, 155 (D.D.C. 2007) (declining "to rely on the Laffey Matrix for . . . relatively simple and straightforward IDEIA cases"); Muldrow v. Re-Direct, Inc., 397 F. Supp. 2d 1, 4 (D.D.C. 2005) (refusing to award "high-end fees" in "what is in essence a relatively straightforward negligence suit"). The Court therefore will award fees at an hourly rate equal to three-quarters of the USAO Laffey rate: $308 for Mr. Tyrka and $169 for Mr. Ostrem and Mr. Nahass.[3]

In her motion for fees the plaintiff suggests that Mr. Meehan should be compensated as a minimally experienced attorney as of the summer of 2009, when Mr. Meehan graduated from law school. See Fee Mot., Ex. 1 at 3; Surreply Resp. at 5. Mr. Meehan, however, was not licensed to practice law in the District of Columbia at that time or, apparently, at any time since, see Surreply at 15, and so is not entitled to bill at the same rate as an attorney. See Agapito v. District of Columbia, 477 F. Supp. 2d 103, 112 (D.D.C. 2007). His fees therefore will be calculated at a rate of $98 per hour, the same rate that would be applicable to the services

---

[3] Coincidentally, this determination leads to the award of fees at rates almost identical to those proposed by the defendant. See Obj. at 16-17.

of a paralegal or law student. Furthermore, Mr. Meehan needs to explain to this Court why he should not be referred to either the Board on Professional Responsibility or the District of Columbia Court of Appeals Committee on Unauthorized Practice of Law for holding himself out as a lawyer with an office in the District of Columbia when he is not a member of the District of Columbia Bar. See D.C. CT. APP. R. 49(a),(b), (c)(5), (c)(8); Agapito v. District of Columbia, 477 F. Supp. 2d at 108-16; Blackman v. District of Columbia, 355 F. Supp. 2d 171 (D.D.C. 2005).

### B. Reasonableness of Hours Billed

The defendant contends that a number of hours claimed for work completed by plaintiff's counsel between June 2008 and August 2008 are "too remote in time to have any relationship to the administrative proceedings" at issue in this case. Obj. at 20. While the Court declines to determine precisely at what point legal services become "too remote in time" to be compensable under a fee-shifting statute, it agrees that the plaintiff is not entitled to attorneys' fees for work performed between June 2008 and August 2008, for the simple reason that the work in question was obviously not related to the present case. In this action, the plaintiff ultimately prevailed on her claim that DCPS denied M.R. a FAPE and owed M.R. compensatory education services because M.R. was unable to attend Sousa — or any other school — between September 2, 2008, and October 22, 2008. See See Dismissal Order at 1 (D.D.C. Mar. 4, 2010) (dismissing case upon parties' agreement that M.R.'s right to compensatory education would be reconsidered in light of "the student's absence from school during September and October 2008"). Plaintiff's counsel, however, represents that he or his staff performed work related to

this claim in June, July, and August of 2008 — before the incident constituting denial of FAPE even occurred.  See Fee Mot., Ex. 1 at 1.

A cursory examination of the questionable charges reveals that they relate to a separate, failed administrative complaint — one that was filed on August 12, 2008, see AR at 30, and led to the issuance of an HOD adverse to the plaintiff on September 24, 2008.  See id. at 30-34.  The summer 2008 entries in plaintiff's counsel's billing itemization clearly correspond to the August 12, 2008 complaint: those entries refer to drafting a complaint on August 4, 2008 and editing it for the last time on August 12, 2008, and they mention preparing for an "coming [due process] hearing" on August 18, 2008.  Fee Mot., Ex. 1 at 1.  Because those entries obviously do not relate to the instant litigation, the fees associated with them will be disallowed.  The Court therefore will exclude from reimbursable fees all fees claimed for work performed prior to September 2, 2008, and for work performed on September 10 and September 15, 2008, which appears to have related to the August 12, 2008 administrative complaint.

The defendant also argues that the time of plaintiff's counsel has been improperly recorded in quarter-hour increments instead of increments of a tenth of an hour.  See Obj. at 19.  Because plaintiff's counsel has averred that this is the customary practice of his firm, see 4/8/2010 Tyrka Decl. ¶ 3, generally no reduction in the fees that should be awarded to the plaintiff is warranted on this basis.  See A.C. *ex rel.* Clark v. District of Columbia, 674 F. Supp. 2d 149, 156-57 (D.D.C. 2009); Thomas *ex rel.* A.T. v. District of Columbia, Civil Action No. 03-1791, 2007 WL 891367, at *4 (D.D.C. Mar. 22, 2007).  There is one exception to this ruling: Spending one-quarter hour, or 15 minutes, to review a one-or two-page court order is excessive.  Accordingly, the Court will exclude all the time billed by Mr. Tyrka on April 2 and 29, May 22

and 26, and December 29, 2009, as well as on February 23 and March 4, 2010. For the same reason, the Court will also exclude fees for time spent by Mr. Ostrem on March 4, 2010.

The Court will not reduce plaintiff's requested fees on any of the other grounds asserted by the defendant: that plaintiff's counsel seeks compensation for clerical tasks improperly performed by attorneys, see Obj. at 22; that plaintiff's counsel in several instances has billed twice for the same work, see id. at 22-23; that plaintiff's counsel appears to have spent "excessive" time on three tasks, see id. at 23; or that three entries in the billing records of plaintiff's counsel are either improperly "bundled" or overly vague. See id. at 24. These arguments by the defendant are poorly supported and unconvincing.

The plaintiff's request for additional fees allegedly incurred after the filing of her original motion for fees in this case may also be classified as poorly supported. Without submitting any documentation whatsoever, the plaintiff claimed in her response to the defendant's surreply that she is entitled to an additional award of $5,000 to cover fees and costs incurred while litigating issues related to attorneys' fees. Surreply Resp. at 11. In spite of the lack of support for this fee request, the defendant has failed to object to Magistrate Judge Robinson's recommendation that the request be granted. The Court will accept the recommendation of the magistrate judge with respect to that issue. It declines, however, to award the plaintiff the additional $3,000 that she currently requests because her counsel supposedly "has now been forced to expend more than 22 hours in reviewing" and responding to the defendant's objections to the Report and Recommendation of Magistrate Judge Robinson. Obj. Resp. at 25. The defendant's objections are virtually identical to its original arguments in opposition to the plaintiff's request for fees and should not have required plaintiff's counsel to spend an amount of time even approaching 22 hours to produce a response. The $5,000

recommended by the magistrate judge should amply compensate plaintiff's counsel for time spent defending the fee petition; the plaintiff has not demonstrated that any additional fees would be reasonable.

Finally, the defendant argues that the plaintiff may not be reimbursed for "routine business expenses" such as the costs associated with sending faxes, making copies, and buying postage. Obj. at 24-25. The legal authority cited by the defendant in connection with this argument, however, is problematic for two reasons. First, it addresses a request for fees and costs brought under the Equal Access to Justice Act, not the IDEA. See Role Models America, Inc. v. Brownlee, 353 F.3d 962, 965 (D.C. Cir. 2004). Second, in the case cited by the defendant, the court of appeals ordered that copying costs be reimbursed, thus contradicting the defendant's argument that such costs are not compensable. See id. at 975. "[C]osts for copying, faxing, and postage . . . are customarily included in fee awards" made in IDEA litigation, and the defendant will be required to pay those costs here. Kaseman v. District of Columbia, 329 F. Supp. 2d 20, 28 n.7 (D.D.C. 2004).

## IV. CONCLUSION

For the foregoing reasons, the plaintiff will be awarded fees and costs based on the following calculations: All claims for work performed on September 10 or 15, 2008, or prior to September 2, 2008, are excluded, as are any claims for work performed by Yanet Scott or Sharon Millis or for time spent by Douglas Tyrka or Nicholas Ostrem reading court orders. The rates deemed reasonable by the Court then are substituted for those proposed by the plaintiff, yielding a total of $17,791.50 in fees for all work up to and including preparation of the plaintiff's fee petition. Added to that total is the $5,000 awarded by the magistrate judge, and not

15

challenged by the defendant, for fees incurred in litigating the fee petition. That total is supplemented by $558.92 for expenses, yielding a final award of $23,350.42. An Order consistent with this Opinion shall issue this same day.

       SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: August 9, 2011